UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IRON WORKERS OF WESTERN PENNSYLVANIA PENSION PLAN, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAREMARK RX, INC., et al.,<br><br>Defendants | Case No. 3:06-1097<br>Judge Trauger |

# MEMORANDUM

This case comes before the court on a Motion for Expedited Discovery and Order to Show Cause Why a Preliminary Injunction Should Not Issue filed by the plaintiff (Docket No. 20), to which the defendants have responded (Docket No. 32), and a Motion to Stay Proceedings filed by the defendants (Docket No. 33). For the reasons discussed herein, the defendant's Motion to Stay Proceedings will be granted, and the plaintiff's Motion for Expedited Discovery and Order to Show Cause will be denied as moot. This case will be stayed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiffs, Iron Workers of Western Pennsylvania Pension Plan ("Iron Workers"), have filed suit on behalf of all shareholders of Caremark against that entity, its board of directors, and its CEO, Edwin M. Crawford, for one claim of breach of fiduciary duties arising from the sale of Caremark stock to CVS Corp. The Complaint, filed in this court on November 8, 2006, alleges that the defendants entered into a stock-for-stock agreement with CVS through

1

which Caremark's stock was significantly undervalued and, in return, the defendants were rewarded with large financial incentives. (Docket No. 1) Further, the Complaint alleges that the CVS agreement contains several non-competitive clauses rendering it difficult, if not impossible, for a rival offer to prevail. Essentially, the Complaint alleges that the defendants captured a change-of-control premium for themselves and, in exchange, agreed to contractual terms that render it impossible for the defendants to fulfill their fiduciary responsibilities to the Caremark stockholders.

Meanwhile, on December 21, 2006, a different group of stockholders, Louisiana Municipal Police Employees' Retirement System ("LAMPERS"), filed an almost identical suit in the Delaware Court of Chancery against the CEO and Board of Directors of Caremark, and against CVS Corp., seeking to enjoin the implementation of the same transaction. (Docket No. 32, Ex. 7) The Delaware case alleges (1) breach of fiduciary duty for failure to consider a bona fide superior proposal, (2) breach of fiduciary duty for including terms in the CVS agreement which act as barriers to the success of unsolicited competing offers, (3) breach of fiduciary duty for failure to disclose the competing offer and (4) a claim of aiding and abetting the breach of the fiduciary duties against CVS. Although it includes additional information, such as a prior, superior proposal for stock purchase issued by E-Scripts and several additional anti-competitive provisions of the CVS agreement, as well as additional allegations of malfeasance regarding CEO Edwin Crawford's negotiations with CVS, the Delaware complaint appears to include all of the allegations in the complaint before this court. The Delaware complaint does not name Caremark itself as a defendant, and its request for injunctive relief seeks to enjoin the parties "from taking any action to consummate the CVS/Caremark merger" rather than "rescinding, to

2

the extent already implemented, the Acquisition or any of the terms thereof" as requested in the federal complaint. In addition, the Delaware Complaint names CVS Corp. as a defendant. Otherwise there is very little to distinguish the two actions from one another.

On December 21, 2006—the same day that the Delaware action was filed—Iron Workers filed a Motion for Temporary Restraining Order, Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue in this court. (Docket No. 20) On December 22, 2006, this court denied the plaintiff's Motion for Temporary Restraining Order, and set a hearing for the plaintiff's request for expedited discovery for January 4, 2007. (Docket No. 26)

On December 29, 2006, the Delaware Court of Chancery held a telephonic hearing regarding LAMPERS' motion for expedited proceedings and a preliminary injunction. The Chancery Court granted LAMPERS' motion for expedited proceedings and set a preliminary injunction hearing for March 20, 2007, with the understanding that the hearing date would move up if the Caremark shareholder vote is scheduled prior to March 20.

On January 3, 2007, the defendant filed a Motion to Stay Proceedings (Docket No. 33), and on January 4, 2007, this court held a hearing to discuss the pending motions.

## ANALYSIS

The defendants have moved to stay the federal action in this court under the *Colorado River* abstention doctrine. Under that doctrine, a court may stay a federal case "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976). Despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," the Supreme Court has directed that abstention may be justified by "considerations of '[w]ise

3

judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). The *Colorado River* analysis is composed of two parts: first, the court must determine that the concurrent state and federal actions are actually parallel, *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998), and second, the court must weigh several factors identified by the Supreme Court in *Colorado River Water*, 424 U.S. at 818-819 and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23-26.

## I.     The Parallelism Requirement

The Supreme Court has never strictly defined what it means for two cases to be parallel, but has instead directed that a stay be granted only where it would allow for "a quick and prompt resolution between the parties" such that the federal court "will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone*, 460 U.S. at 28. The Sixth Circuit has held that "exact parallelism" is not required," and instead, "[i]t is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

Because, in the two cases at hand, there is not a strict identity of parties, the court must first address whether the Sixth Circuit requires that the parties be identical in order for the cases to be parallel. In two cases, the Sixth Circuit seems to have indicated that parallelism does require identity of parties. In *Baskin v. Bath Township Board of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994), the Sixth Circuit stated that it was "immediately apparent" that the parallelism requirement had not been met because "the state and federal actions involved in this case do not possess the required identity of parties and issues." Similarly, in *Crawley v.*

4

*Hamilton County Commissioners*, 744 F.2d 28, 31 (6th Cir. 1984), the Sixth Circuit supported its holding that the proceedings were not parallel in part by pointing out that "the parties . . . are different."

However, in *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990), the Sixth Circuit held that the fact that the parties in the state and federal action were different "is not relevant to *Colorado River* abstention." *See also Bates v. Van Buren Township*, 122 Fed. Appx. 803, 806 (6th Cir. 2004) ("There is . . . no requirement that the parties in the state court proceedings be identical to those in the federal case.") And in *Romine*, which dealt with two pending class actions brought on behalf of a class of stockholders against a corporation, the Sixth Circuit held that the fact that the federal case included defendants—the Underwriters—that the state case did not could not itself defeat parallelism. 160 F.3d at 340. Instead, the court stated explicitly that, "the argument that abstention is inappropriate because the federal cause of action included parties not present in the state proceedings 'is not relevant to *Colorado River* abstention.'" *Id*. (quoting *Heitmanis*, 899 F.2d at 528). Further, the Sixth Circuit stated that, "[t]his principle is especially apposite in the instant matter, where the interests of both the named plaintiffs and the identical putative classes they seek to represent are congruent, notwithstanding the nonidentity of the named parties." *Id*.

Between the Delaware and federal cases at issue, the named plaintiffs (although not the classes they each seek to represent) are different and, additionally, in the federal case, Caremark itself has been named as a defendant, whereas in the Delaware case, only the CEO and directors of Caremark have been named, along with CVS Corp. However, these do not amount to material differences. As in *Romine*, the interests of both Iron Workers and LAMPERS are congruent,

5

"notwithstanding the nonidentity of the named parties." *Id*. *Romine*, which presented an almost identical situation—and was decided after both *Baskin* and *Crowley*—controls, and the lack of identity of parties cannot itself defeat parallelism.[1]

Moreover, in *Baskin* and *Crowley*, the Sixth Circuit relied more heavily on factors other than non-identity of the parties, such as a difference in claims and the underlying facts in the cases, to defeat parallelism. For instance, in *Baskin*, the court stressed "the very different theories" advanced by the plaintiffs in the two cases at issue and held that, "in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action." 15 F.3d at 572. In *Crawley*, which involved two different constitutional challenges to a correctional institution, the court stressed that "the claims involved [in the two cases] are also very different." 744 F.2d at 31. In fact, in *Crawley*, the federal and state cases appear to have drawn on allegations from different time periods, and the state case did not address "issues of overcrowding or use of mace, shackles, and blackjacks," all of which were alleged in the federal case. Both *Baskin* and *Crowley*, therefore, are consistent with other Sixth Circuit precedent indicating that it is the claims and issues which must be parallel, and not the parties.

In the two cases at hand, if there is any disparity regarding the claims and issues in the two cases, it is that the Delaware action is broader in scope than the federal action. The federal

---

[1] At the hearing, the defendants alleged that LAMPERS had inadvertently omitted Caremark as a defendant in the Delaware action and was planning to amend its Delaware complaint to correct the error. As stated above, however, the court does not rely on this fact because, under *Romine*, an additional named defendant in the federal action does not defeat parallelism between the federal and state cases. *Id*. In fact, as discussed below, the Sixth Circuit directs the court to consider the pleadings as they currently exist and not give weight to potential modifications. *See Crawley*, 744 F.2d at 31.

6

action, however, is completely incorporated within the Delaware case. For instance, the Delaware complaint lists all of the problematic terms in the CVS agreement that are listed in the federal complaint—the $675 million termination fee, the no shop provision, and the "last look" provision—while also listing several more provisions alleged to violate the defendants' fiduciary duties. Additionally, the Delaware complaint makes specific allegations regarding the impropriety of the negotiations process itself and the rejection of the E-Scripts proposal that do not appear to have been addressed in the federal complaint. There do not appear to be any allegations or claims in the federal complaint that cannot also be found in the Delaware complaint.

There is a slight difference in the form of relief requested. The plaintiffs in both cases each request, among other relief, injunctions prohibiting the consummation of the CVS agreement. However, in the federal case, the plaintiffs additionally request that the CVS agreement be rescinded. This is not a functional difference. Both plaintiffs seek an injunction stopping consummation of the CVS agreement and directing the defendants to exercise their fiduciary duties in analyzing all pending offers for sale of Caremark stock. The court has found no authority in this circuit or any other indicating that minute differences regarding the form of injunction requested can defeat parallelism.

To the contrary, the *Romine* case, once again, appears to be directly on point. In *Romine*, the state action was "actually more comprehensive than the consolidated federal cases." 160 F.3d at 340. Citing the rule that the state and federal cases need only be "substantially similar" the court held that the actions "must be considered 'parallel' for the purposes of the *Colorado River* abstention doctrine." *Id.*; *see also Bates*, 122 Fed. Appx. at 806 ("The fact that the state

action is broader than the federal is no bar to Colorado River abstention, because this fact can only make it more likely that it will not be necessary for the federal courts to determine the federal question.") Accordingly, because the Delaware action will resolve all issues presented in this case, such that it would not be necessary for this court to take further action regarding the single cause of action—under Delaware law—that has been presented, the two cases are parallel.

## II.     The *Colorado River/ Moses H. Cone* Factors

Next, the court must address the eight factors that have been enumerated by the Supreme Court. Those factors are: (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings and; (8) the presence or absence of concurrent jurisdiction. *See Romine*, 160 F.3d at 341 (citing *Colorado River*, 424 U.S. at 818-819; *Moses H. Cone*, 460 U.S. at 23-26; *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978)). The factors "do not comprise a mechanical checklist," *Romine*, 160 F.3d at 341, and instead require "a careful balancing of the important factors as they apply in a given case." *Moses H. Cone*, 460 U.S. at 15-16.

The state court has not assumed jurisdiction over any *res* in this case, and therefore the first factor weighs against abstention. With regard to the second factor, it is difficult to say which forum is less convenient for the parties. Caremark is a Delaware Corporation; however, its headquarters are located here in Nashville, Tennessee. The individual defendants in both cases are citizens, respectively, of Alabama, New Jersey, Florida, Tennessee, Connecticut,

8

Arizona, North Carolina, Minnesota, Arizona, Illinois, and Connecticut. The named plaintiff in this case is a citizen of Pennsylvania, and the named plaintiff in the Delaware action is a retirement system created by the State of Louisiana. Both plaintiffs seek to represent a nationwide class of stockholders. The court cannot say that Tennessee is necessarily less convenient than Delaware and, therefore, this factor also weighs against abstention.

However, the remaining factors strongly support abstention. The third factor is avoidance of piecemeal litigation which, as the Supreme Court noted in *Moses H. Cone,* was "the consideration that was paramount in *Colorado River* itself," 460 U.S. at 19. Piecemeal litigation occurs where "different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 337 (citing *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). Both cases at hand depend on resolution of a question of Delaware law, namely, whether the relevant provisions of the CVS agreement actually violate the defendants' fiduciary duties of care and loyalty. Given the fact that the parallel state action is actually pending in Delaware, the danger of piecemeal litigation counsels strongly in favor of abstention. Moreover, as the Sixth Circuit noted in *Romine*, "the specter of judicial duplication of effort looms particularly ominously in the class action context, where the potential for inefficiency is acute," *id*. at 341, and even further "'judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits.'" *Id*. (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985).

The Supreme Court has held that the fourth factor, the order in which jurisdiction was

9

obtained, must be viewed in the context of the relative progress of the two cases (which is also the seventh factor). *See Moses H. Cone*, 460 U.S. at 21-22. According to the Supreme Court, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id*. at 21. The Delaware case was filed forty-eight days after the federal case. However, no progress was made in the case at hand until December 21, 2006, when the plaintiff moved for a Temporary Restraining Order. In the Delaware case, the court has already granted expedited discovery, which the parties are conducting, and a hearing has been set on the application for a preliminary injunction. Therefore, the fourth factor counsels in favor of abstention.[2]

The fifth factor, whether the cause of action is grounded in state or federal law, also counsels in favor of abstention, as does the sixth factor, the adequacy of the state court action to protect the federal plaintiff's rights.[3] The Delaware Court of Chancery is a more than adequate forum for the parties to litigate their Delaware cause of action. Although Iron Workers alleges that a slight difference in the wording of the injunctions requested in the two cases gives its federal case an entirely different focus, the court does not find that argument persuasive. Both

---

[2]As counsel for Iron Workers admitted at the hearing, notwithstanding its argument that its delay in this case is due to the strenuous confines of Rule 26 of the Federal Rules of Civil Procedure, Iron Workers could have moved for a Temporary Restraining Order or a motion for expedited discovery at any time after filing its complaint.

[3]At the hearing, counsel for Iron Workers alleged that it might file a federal claim at some point in the future based on SEC proxy statements that the defendant has not filed yet. The court does not find this potential claim to be relevant to the issue at hand. In fact, the Sixth Circuit has explicitly held that potential modifications to pleadings should not be considered when performing a *Colorado River* analysis. *See Crawley*, 744 F.2d at 31 ("While it may be true, as the [defendant] maintains, that [the state action] *could* be modified so as to make it identical to the current federal claim, that is not the issue here.") Instead, the Sixth Circuit has directed that we consider each action "as it *currently* exists." *Id*.

10

Iron Workers and the Delaware plaintiffs, LAMPERS, seek to enjoin consummation of the CVS agreement and to compel the directors and CEO of Caremark to review all pending offers in accordance with their fiduciary duties which—both plaintiffs allege—are impeded by the terms of the CVS agreement. That is, both cases have the same focus. Although the Delaware case includes causes of action and allegations in addition to those pled by Iron Workers in this court, Iron Workers has not alleged any rights that are not subsumed in the Delaware case. That case will more than amply protect Iron Workers' rights.

The seventh factor, which the court has already discussed in the context of the fourth factor (the relative progress of the two cases) also counsels in favor of abstention.

Finally, the eighth factor, the presence or absence of concurrent jurisdiction, is not a particularly relevant factor here. Although, at the hearing, counsel for Iron Workers attempted to marshal this factor against abstention, concurrent jurisdiction is typically discussed only where the case involves a federal cause of action. *See, e.g., Moses H. Cone*, 460 U.S. at 26; *Romine*, 160 F.3d at 342. That is, federal courts have justified abstention, even where the parallel cases involve federal causes of action, where the state court could exercise concurrent jurisdiction over those causes of action. *Romine*, 160 F.3d at 342 (holding that, where Ohio held concurrent jurisdiction over the federal claims asserted under the Securities Act of 1933, "[t]he source-of-law factor has less significance"). The fact that this court has concurrent jurisdiction over the single Delaware cause of action asserted is immaterial. There is no issue as to whether the Delaware courts may exercise full jurisdiction over the plaintiff's single claim.

Because the federal and Delaware cases are parallel, and because the *Colorado River/Moses H. Cone* factors counsel in favor of abstention, this court must abstain from

11

adjudicating this case.

## CONCLUSION

For the reasons stated herein, the defendant's Motion to Stay Proceedings will be granted. The defendant's Motion for Expedited Discovery and Order to Show Cause Why a Preliminary Injunction Should Not Issue will be denied as moot. This case will be stayed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge